■ In the Matter of MIDTOWN FLORIST & NURSERY, INC., Appellant, v CITY OF NEW YORK et al., Respondents.—In a proceeding pursuant to CPLR article 78 to review a determination of the New York City Department of Housing Preservation and Development, dated November 1, 1989, which, upon a review of the report of a Hearing Officer, denied the petitioner's application for relocation benefits pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (42 USC § 4601 *et seq.),* and for related relief, the petitioner appeals from a judgment of the Supreme Court, Kings County (Bernstein, J.), dated May 16, 1991, which dismissed the proceeding.

Ordered that the judgment is reversed, on the law, with costs, the petition is granted, the determination denying the petitioner relocation benefits is annulled, and the matter is remitted to the Supreme Court, Kings County, for a determination of the amount of relocation benefits owed to the petitioner.

The petitioner, Midtown Florist & Nursery, Inc., was a tenant in a building known as 118 through 126 Flatbush Avenue, in Brooklyn. In May 1969 the City of New York condemned the property which included this building, in furtherance of an urban renewal plan which had been adopted by the Board of Estimate in 1968. In June 1972 the City paid the petitioner the sum of $22,825 as a condemnation award relating to the value of the fixtures located on the petitioner's premises.

In May 1985 the City prepared a "thirty day notice to

vacate" with reference to the petitioner's premises, which stated as follows: "PLEASE TAKE NOTICE that the City of New York * * * which is now the owner of the Building, seeks to empty the Building and demands that you vacate and move out * * * within thirty (30) days * * * IF YOU FAIL TO VACATE AND MOVE OUT OF THE BUILDING within thirty (30) days, the City will commence appropriate judicial proceedings".

According to the Hearing Officer upon whose report the present administrative determination was supposedly based, this notice was received by the petitioner in October 1985. Also, in an "order of possession" granted July 25, 1986, issued in response to the City's application, the Supreme Court ordered the petitioner, among numerous other tenants, to "vacate the premises occupied by them".

In October 1985 the petitioner entered into an agreement with the City's Department of Housing Preservation and Development (hereinafter HPD) pursuant to which it promised to relocate to 115 Flatbush Avenue, Brooklyn, on or about November 30, 1985. According to this agreement, the petitioner was to submit its "Relocation Claim" within six months of its "displacement". On or about November 12, 1985, the City transferred title to the premises to the Times Plaza Development Corp. (hereinafter TPDC).

In May 1986 HPD's Bureau of Relocation Services agreed with the petitioner "that the amount to be paid to the Relocatee [petitioner] for the moving component * * * of the move shall be the sum of * * * $299,000". This written agreement was made pursuant to the "Rules and Regulations of the City of New York and the U.S. Department of Housing and Urban Development governing relocation payments". According to the report of the Administrative Hearing Officer, the petitioner "commenced its move some six (6) months after the conveyance of the site to TPDC and actually moved equipment and other items worth $224,250.00". The Hearing Officer also found that "[t]he move was verified by HPD personnel and approved as to amount".

The petitioner requested relocation benefits. The Hearing Officer assigned to review this application found, among other things, that the petitioner had been "at all times treated by the City as a relocatee". The Hearing Officer found that petitioner's relocation occurred after, rather than before, transfer of title to TPDC not out of "convenience for itself" but instead "out of necessity". The Hearing Officer also found that there was "no discussion at all with [the petitioner], that by virtue of the [City's] conveyance [of title] to TPDC [it]

would lose its relocation claim". Further, the Hearing Officer found that other, similarly situated tenants, were "eventually paid relocation payments". Notwithstanding all of the foregoing, the petitioner's request for relocation benefits was denied at the administrative level and this determination was confirmed by the Supreme Court. We reverse.

Under the circumstances outlined above, and all of the other circumstances of this case, we find, as a matter of law, that the petitioner was induced to relocate "as a result of the acquisition of such real property * * * as the result of [a] written order of [an] acquiring agency, to vacate real property for a program or project undertaken * * * with Federal financial assistance" (42 USC § 4601 [former 6]). The respondents argue, among other things, that title to the property in question was conveyed to a private entity, the TPDC, in November 1985, and that the petitioner did not actually vacate the premises until after that date. Accepting this argument, the Supreme Court stated: "[s]ince [the petitioner's] move began subsequent to TPDC's acquisition of the parcel, the City would no longer require [the petitioner] to relocate". We disagree with this analysis.

In order for the petitioner to be entitled to relocation benefits, the law required, *inter alia,* that the petitioner's relocation was induced by the acquisition of the property for Federally-assisted urban renewal purposes. It may be true that relocation benefits are not available to a party who is required to relocate at the behest of a private corporation *(see, e.g., Gomez v Chody,* 867 F2d 395; *Isham v Pierce,* 694 F2d 1196; *Young v Harris,* 599 F2d 870; *Conway v Harris,* 586 F2d 1137; *Moorer v Department of Hous. & Urban Dev.,* 561 F2d 175, cert denied* 436 US 919). However, it does not follow from the fact that the petitioner's relocation occurred after a private entity, TPDC, had taken title to the parcel, that it was TPDC, rather than the municipal respondents, who brought about that relocation. The evidence establishes conclusively that the relocation was brought about by the conduct of the municipal respondents. The judgment appealed from is therefore reversed, the petition is granted, the determination under review is annulled, and the matter is remitted to the Supreme Court, Kings County, for a determination of the amount owed to the petitioner for relocation benefits. Bracken, J. P., Copertino, Pizzuto and Santucci, JJ., concur.